BARNES and others *vs.* TAYLOR and others.

1. A stale claim by the children of deceased executors against a surviving executor, sought to be enforced more than.twenty years after the occurrence of the transactions out of which his alleged liability arose, and not till after the death of the executor, who was the only witness who, besides the defendants, could speak of the transactions which are called in question, is not favored in a court of equity.

2. Upon such a claim there should be an offer to account for so much of the estate as came into the hands of the deceased executors.

3. Evidence of parol admissions by defendant that he had purchased certain lands for the benefit of the complainants, is insufficient, under the statute of frauds, to create a trust as to such lands, in their favor, without proof of an agreement made before the sale.

4. A trust *e malificio*, and therefore constructive, is barred by the statute of limitations.

---

Bill for relief. On final hearing on pleadings and proofs.

*Mr. S. D. Dillaye*, for complainants.

*Mr. J. S. Aitkin* and *Mr. B. Gummere*, for defendants.

THE CHANCELLOR.

The bill is filed by the children of William S. Barnes, deceased, and the widow and children of John R. S. Barnes, deceased, against Dr. John L. Taylor and his wife, and against Dr. Taylor as executor of Isaac Barnes, deceased, who was the father of William S. Barnes and John R. S. Barnes and of Mrs. Taylor. The controversy between the parties is in reference to the estate of Isaac Barnes, the testator above mentioned. By his will, he gave all his estate, real and personal, to his three children, John R. S. Barnes, William S. Barnes and Mrs. Taylor, subject to a provision for his wife, contained in a power to his executors, (his two sons and Dr. Taylor,) to sell any part or the whole of his estate, as they might deem expedient, with direction to invest the proceeds

of sale, after paying the legal demands against the property; his wife to receive the interest of the investment for life. The testator died in 1848; his widow in 1851; William S. Barnes in April, 1873, and John R. S. Barnes in May, 1874. The bill was filed on the 29th of June in the last-mentioned year. The testator was the owner, at his death, of certain household furniture and a stock of merchandise in his store in Trenton, and he died seized of certain real estate in that city. Part of the latter was encumbered by a mortgage given to Isaac Brown Parker, and another part by a mortgage given to James J. Duncan. Under foreclosure of those mortgages, the land thereby mortgaged was sold to Dr. Taylor by the sheriff, in 1852. The rest of the testator's land consisted of a lot sold by his executors to Joseph C. Potts, in 1848, for $6250, and a lot sold by his devisees in 1850, to William B. Brittain, for $1212.50. The bill alleges that Dr. Taylor was acting executor; that no inventory or account of the personal estate was ever filed; that he received all the rents of the real estate, and is chargeable with the price of the land sold to Potts and Brittain, which, or so much thereof as might have been necessary for the purpose, after application of the personal estate and rents received by him, the complainants insist he ought to have applied to the satisfaction of the Parker and Duncan mortgages. The bill charges that instead of so doing, he caused the property mortgaged to Parker and Duncan respectively, to be sold under foreclosure, and purchased it at the sheriff's sale, and that he purchased the property mortgaged to the former, on an agreement made by him with William S. Barnes and John R. S. Barnes, before the sale. The statement of the bill on the subject of the agreement is, that it was understood and agreed by and between him and William and John, that as they were not in a condition to enable them to raise money to pay off their respective proportions of the money due on the decree of foreclosure, the mortgaged premises should be sold, and that he should become the purchaser at the sale, provided they were sold at about the sum for which they stood charged by the decree; but that such pur-

chase was to be upon the express understanding and agreement between him and them, that he should take and hold the title, first as security for the sum he might be required to bid and pay therefor on the sale, and next for the joint use of his wife (who was their sister,) and them, according to the devise in the will of their father. The bill states that he purchased the property at the sheriff's sale, and paid for it $11,000. The decree was for $6133.36, besides interest. It further states that he purchased the property mortgaged to Duncan on the same agreement, understanding and trust. The decree in that case was for $1016.28, besides interest, and the property was sold to him for $1655. The bill alleges that at these sales, he prevented bidding against him by requesting different persons who were in attendance, not to bid against him, as he was, as he alleged, bidding on the property to buy it for the devisees. It states that he permitted William S. Barnes to occupy part of the property purchased at the sale under the Parker foreclosure, during his life, and his children after his death, and that John R. S. Barnes, also, after the sheriff's sales, occupied, without paying rent, other parts of the property, and that such occupation, on the part of William and John, was under an agreement between him and them that it was to be accounted for in the settlement thereafter to be made under the trust. The bill prays an account, and that Dr. Taylor and his wife may be compelled to convey to the complainants their shares in the property, or that the property may be sold and the complainants may be paid their just shares.

The claim in this case is one which, for obvious reasons, cannot be favored in a court of equity. It is a stale claim, made under circumstances which cannot fail to weigh heavily against it. It is an effort to hold to the strictest possible accountability one of the three executors, after a period of over twenty years has elapsed since the occurrence of the transactions from which his supposed liability is claimed to have arisen; and not only so, but the persons who make the claim are the children of one, and the widow and children of

the other of his co-executors. The filing of the bill has been deferred until both of these co-executors are dead. William S. Barnes died in 1873, and John R. S. Barnes died in May, 1874. The bill was not filed until June of the year last mentioned. By the death of John, the defendants were deprived of the only witness who, besides Dr. Taylor, could speak of the transactions which are called in question. It appears that the personal estate of the testator consisted of his stock in trade and household furniture. The former went into the hands of. William and John, who had the entire benefit of it, and they, or one of them, also had the benefit of the latter, except such insignificant part thereof as was taken by their mother for her own use. These complainants, claiming under William and John, who never accounted at all for the property which came to their hands, are in no situation to demand an account from Dr. Taylor of the personal estate. It does not appear that he had any part of it, except it may have been the bed and bureau brought to his house, for her own use there, by the testator's widow. No offer is made in the bill by the complainants, to account for that part of the personal property received by William and John. *Ashley* v. *Allden*, 10 *E. L. & Eq.* 314. It appears that there was no personal estate applicable to the payment of the mortgage debts, because it was taken into possession and consumed by William and John. It appears, also, that the same persons received all the consideration, $6250, of the sale by the executors to Potts, and, for aught that appears, they received, also, all the consideration, $1212.50, of the sale to Brittain. But, however that may be, this latter sale was not made by the executors, but by the devisees. It is in evidence, also, that William and John received the rents of all the real estate sold under the foreclosures up to the time of the purchase thereof by Dr. Taylor. The mortgages had been given by the testator. That at the time of the foreclosure of the mortgages, there was no personal property applicable to the payment thereof, and no means to prevent a sale of the premises under foreclosure, is abundantly manifest from the

statements of the bill itself. It alleges that the reason for the making of the agreement which it sets up, by which Dr. Taylor was to purchase the mortgaged premises in trust for himself, to re-imburse him for the purchase money he would have to pay, and interest, and in the next place for the devisees, was that William and John "were not in a condition to enable them to raise the money to pay off their respective proportions of the mortgages or decrees and the costs and expenses thereof." At that time, then, there were no means to pay off the mortgages, whether personal property or rents, or proceeds of sale of real estate. If such an agreement was made, it distinctly recognized the fact that it was necessary, in order to pay off the mortgages, for the devisees to make contribution. At that time the furniture and stock in trade, which were all the personal property, had been disposed of, and the land sold by the executors had been conveyed to Potts, and that sold by the devisees had been conveyed to Brittain. It was not claimed that Dr. Taylor had received any part of the estate for which he ought to account, but the statement as to the agreement concedes the fact that there were no means of the estate applicable to the payment of the mortgages. William and John, by whom the agreement is alleged to have been made, were both fully aware of the situation of their father's estate. Their opportunities for knowledge were quite as good, to say the least of it, as Dr. Taylor's. They, rather than he, had been the active executors. Indeed, there is no proof to sustain the charges of the bill that he was the active executor. They knew who had received the benefit of the personal property. They knew who had had the rents and who had received the $6250 for the land sold to Potts, and the $1212.50 for the property sold to Brittain. Nor did they, or either of them, at any time, so far as appears, make any demand or claim upon Dr. Taylor for any account in respect of the estate, but both were recipients of pecuniary favors at his hands, granted by him as bounty, and recognized by one of them, at least, as such. It is incredible that these two men,

both poor from the time of these purchases at sheriff's sale down to the day of their death, should not, if the allegations of the bill are true as to the purchase of the mortgaged premises, at least have made some application to Dr. Taylor, looking to the receipt by them of their interest in the property, or some equivalent therefor, or some compensation for or in respect to it. It is incredible that, under such circumstances, they should both have been the recipients of what he extended to them as bounty, without a suggestion of claim on their part to any interest in the property. The bill states that he paid the price at which the property was struck off to him, and that he paid it out of his own money, also. The very terms of the alleged trust were, according to the bill, that he should, in the first place, re-imburse himself out of the property for the sum he might be required to bid and pay therefor. He denies the existence of the alleged agreement. On this point, his answer is responsive. It explicitly denies the statements of the bill, and he is entitled to the benefit of it. Mrs. Paxson, indeed, testifies that she, with others, signed a paper in 1851 or 1852, as nearly, she says, as she can remember, in Dr. Taylor's office, and she says she was "under the impression, and was led to believe, that it was to give him authority to act for the heirs of the property left by her grandfather, William Smith, and the testator, Isaac Barnes." Dr. Taylor testifies that there never was any such paper. The testimony of Mrs. Paxson on this point is not sufficiently positive or distinct to found a trust upon. She has probably mistaken the character of the paper she was requested to sign. The great length of time which elapsed between the act to which she testifies and the time of her giving her testimony will account for the indistinctness of her recollection, and for the error into which she has probably fallen as to the nature of the paper. The only other evidence of trust as to the property sold under the foreclosure of the Parker mortgage is the testimony of Isaac Barnes and Lewis H. Leigh, two of the complainants, who swear that in a conversation after the death of William S. Barnes, which occurred,

as before stated, in April, 1873, Dr. Taylor said he " bought
in the property for the heirs." This evidence of admission is
insufficient under the statute of frauds, without proof of an
agreement made before the sale. *Walker* v. *Hill's Ex'r*, 6 *C.
E. Green* 191, 195, 196 ; *S. C.*, 7 *C. E. Green* 513, 519, 520 ;
*Lloyd* v. *Lynch*, 28 *Penn.* 419, 423. As to the property sold
under the Duncan foreclosure, the only additional evidence is
that of William H. Potts, who testifies that Dr. Taylor, at
the sheriff's sale of that property, requested him to stop bid-
ding, giving as his reason, that he did not want the property
to go out of the family, and that it was being sold to perfect
the title. He says he stopped accordingly. It may be re-
marked that there is no attempt made to prove any declara-
tions of Dr. Taylor at the sale of the property sold under the
Parker foreclosure, nor that there was any effort on his part,
on that occasion, to deter any one from bidding. The answer
denies that at any of the sheriff's sales, Dr. Taylor requested
any person attending to refrain from bidding for any part of
the land exposed to sale, or that he represented to any person,
in any way, that he was bidding at the sale for the benefit of
the devisees of Isaac Barnes ; and he expressly and explicitly,
when examined as a witness, contradicted Mr. Potts. He is
entitled to the benefit of his answer. Mr. Potts alone testifies
to the alleged fact, and he is not corroborated by any witness
or any circumstance. Besides, the trust which would be
raised by such action on the part of Dr. Taylor would be *e
maleficio*, and therefore a constructive trust, and such a trust
is barred by the statute of limitations, which the defendants
have pleaded. *Angell on Limitations*, § 469 ; *McClain* v.
*Shepherd*, 6 *C. E. Green* 76. For over twenty years, Dr.
Taylor has held possession of the property in question, and
has exercised over it acts of complete and exclusive ownership.
He has paid the taxes on it as his own, has mortgaged it, and
has in every way notoriously claimed to be the owner, to the
knowledge of both William and John, who permitted him so
to treat and deal with it, and never questioned his right so to
do. John, notwithstanding the statement of the bill to the con-

trary, does not appear to have occupied any part of the property, after the sheriff's sales. William occupied part of it, but Dr. Taylor swears it was entirely by sufferance, and there is no evidence to the contrary. Neither William nor John ever took any steps to bring Dr. Taylor to a settlement, or to challenge his title, but for over twenty years permitted him to claim and deal with the property in all respects as his own. Here is such proof of acquiescence on the part of those immediately affected by the alleged frauds, as conclusively settles the merits of the case, before this court, against the complainants. The bill does not seek an account of the surplus on the sale of the property covered by the Parker mortgage. The widow of Isaac Barnes was dead at the time when that sale and the sale under the Duncan mortgage took place. The surplus on them belonged to the devisees. Dr. Taylor swears that he paid the sheriff $11,000 for the property sold under the Parker foreclosure, and the bill states that he paid it. He swears that he paid the sheriff the amount at which he purchased the property sold under the Duncan foreclosure, and that he never received any part of the surplus in either case. The sheriff is dead, and there is no evidence on his books as to what disposition was made of the surplus in either suit. Dr. Taylor was not chargeable with the money as executor. Nor is there any evidence that William and John did not receive, at least, their shares of it. The bill will be dismissed, with costs.